THE facts thought to deserve attention in these causes, which were heard together the 8 day of march, 1793, will appear in the following
OPINION and DECREE, with the notes: That Richard Barnes, (a) having made *212 all the provision which he intended to make for his only son by a marriage contract, after thus forisfamiliating that son, intended to distribute the remainder of his estate among his daughters, in equal or ^'nearly equal portions, the distribution to take effect perhaps partly before and partly after the death of himself and his wife; and that this intention was declared published, by him in such a manner that it must have been known, and designed by him to be known, to his children, and to those who frequented his house, and especially such as were wooing for alliances with his family; these facts appear to the court, not only<= naturaly presumable, but moreover indisputably proven by testimony of witnesses, (b) of whom several are unexceptionable.
And the court is of opinion that the declaration by Richard Barnes of his intention to make such a distribution, and the communication of his testament, -(c) congruous with that intention to Jonathan Beckwith and his wife, purposely to satisfy them that he designed to fulfill it, as appeareth by the letters among the exhibits which passed between Jonathan Beckwith and Richard Barnes, in the month of January, 1758, and in consequence of which an attempt by Jonathan Beckwith and his wife to assert their right to what he and her representatives are now claiming at an earlier day when that assertion might have been less difficult, was possibly declined, the said Richard Barnes in equity was bound to bestow on his daughter Rebecca, the wife of Jonathan Beckwith, the land slaves, and other estate devised and bequeathed to her by the said testament, as effectualy as he could have been bound by a formal compact to do soand this notwithstanding (d) the said Jonathan Beckwith had justly incurred the displeasure of the said Richard Barnes; —because the ill behaviour of Jonathan Beckwith, if it could have deprived him of his own right, which however is not admitted, could not have deprived his wife of her right, his wife, who, if she offended her father by her marriage, the only instance wherein her conduct towards him is pretended to have been culpable, was cordi-aly forgiven by him for it, as is proven by infallible documents.
*The case of Mary Kelsick appeareth to the court to be distinguishable from the case of her sister Rebecca by no circumstance less favourable to the former; for the communication of his testament by Richard Barnes to Jonathan Beckwith and his wife, which possibly prevented a suit meditated in one case, is countervaled by the circumstance in the other case of Younger Kelsicks suit actually commenced, and discontinued probably in consideration of the matters mentioned in the section next following.
And the court is of opinion, that the acceptance by Gerrard Hooe and John Alexander of the slaves allotted to them for their wifes portions according to the testament of Richard Barnes; their acquiescence under that allotment for almost eight years, without disclosing in the mean time a purpose to assert their title to more by the codicils; (e) and the letters among the exhibits to Younger Kelsick from Gerrard Hooe dated on the 23 day of march, 1762, and the other the 12 day of february, 1767 by the former of which the author disavoweth his design or desire to establish the codicil, confessing his opinion to be that the establishment of it was impossible, and his wish to be that it had not been annexed to the will, and by the latter desireth to know when he should receive his wifes part of some cash from the estate of Richard Barnes; whence Younger Kelsick, who did not afterwards prosecute (f) a demand instituted for recovering his wifes marriage portion, and Jonathan Beckwith might conclude with reason that their clames by the will unrevoked would not be controverted: these topics supply arguments sufficient to prove that Gerrard Hooe and John Alexander were bound to abide by the testament and consequently that the codicils annexed to it, so far as they contravene the devises and bequests thereby to Mary Kelsick and Rebecca Beckwith, are void.
But the court is of opinion that the money mentioned in one of the codicils to have been advanced by the testator to *213 Younger *Kelsick ought to be deemed a satisfaction (g) for the tract of about 400 acres of land devised by him to the said Mary Kelsick and said to have been taken tip and patented by him lying near unto the poison old fields likewise devised to her.
And the writing (h) proved and admitted to be recorded as and for the testament of Penelope Barnes in the general court, in which court the validity of that act was not contested, because the fabricators of it, if this failed, had another not more beneficial to Younger Kelsick ready to supply the place of it; a writing which, ujion a full investigation of its validity before the county court, to whom parties and witnesses were probably better known than they were to the other court, was rejected; a writing which instead of being the affectionate valediction of a tender parent to her nearest kinsfolk, on whom, taking her last leave of them, she would wish to bestow a blessing before she died, the phrases and sentiments of it evince to have been the machination of those who were contriving to sanctify gain, already made, and to appropriate to themselves and their families almost the whole of what the testatrix had power to give, and desiring to palliate the odium to which they would otherwise be obnoxious by inserting in the writing an apology for the pretermission of a daughter, which apology must have stung that daughters sensibility by upbraiding her husband; a writing inconsistent with the former declarations of the testatrix, and with a testament made by her when she was not unduly influenced; which circumstances render credible most of the facts narrated by the witnesses examined to prove the malversation of those who transacted the business; this writing appeareth to the court to have been iniquitously procured to be executed.
And the court is of opinion that neither the probate of the said writing, nor Younger Kelsicks confession of error in the sentence of Richmond county court rejecting it, ought to preclude the application of Mary Kelsick to a court of equity to set aside the said writing; and therefore the court doth annul the same for the fraud practised in obtaining it.
And upon the whole matter the court doth adjudge order and decree, that the said John Alexander and Elizabeth his wife do convey to the said Jonathan Beckwith for and during the term of his natural life, and after his death to the before named children *of the said Rebecca, the land (i) recovered by the said John Alexander and Elizabeth his wife against the said Jonathan Beckwith, and deliver possession thereof to him, and pay to the said Jonathan Beckwith the profits of the said land since that recovery, and that the injunction (k) obtained by the said Jonathan Beckwith to stay execution of the said John Alexanders judgement for the mesne profits be perpetual; and that the said John Alexander do pay to the said Jonathan Beckwith as well the costs expended by him in defending the action of ejectment for recovering possession of the land, and the action of trespass for recovering the mesne profits, as the costs recovered against him by, and x>aid to, the said John Alexander in both these actions; that the said Jonathan Beckwith do release the SOW. legacy to him by one of the aforesaid codicils; that the said Mary Kelsick do release her right in and to the tract of about 400 acres of land said to lie near the poison old fields devised to her by the testament of her father; and that the division of the slaves among the daughters of Richard Barnes the testator made pursuant to the order of Richmond county court be confirmed; and that the court doth order and direct that all the other surviving slaves of which the said Richard Barnes and Penelope his widow died possessed respectively with the increase of the females be divided into four equal parts to be allotted one to Jonathan Beckwith the father and to each of the said Mary Kelsick, Sarah Hooe, and Elizabeth Alexander; that an account of the profits of the said slaves, so to be now divided, and of such of that stock as are dead, which have been received by all or any of the parties and by Gerrard Hooe in his life time, since the death of Penelope Barnes, be made up; that the said Jonathan Beckwith do make up an account (l) of his administration of Richard Barnes; and that the said John Alexander and Sarah Hooe do make up an account of such estate of the said Richard Barnes and Penelope Barnes, exclusive of the slaves first divided, as came to the hands of the said Gerrard Hooe and John Alexander and their wives, and the court doth appoint commissioners to make the said division of slaves and to examine, state, and settle the said accounts and report the same with any matters thought '^pertinent by themselves or required by the parties to be specialy stated, to the court, authorizing any or more of the commissioners to act and to procede in the absence of any party failing to attend them after notice of the time and place appointed for that purpose, and for information upon the subjects of reference to examine any of the parties in a solemn manner.

 He was the father of M. Kelsick, R. Beckwith, S. Hooe, and E. Alexander; and by his testament 15 *212 lay of july, 1761, had devised lands to these daughters, and bequeathed twenty negro slaves to his wife Penelope Barnes during her life, empowering her to dispose of them among his daughters, or some of them, and bequeathed one slave to each daughter, and the residue to be divided among them all. — Note in edition of 1795.

 The fame of John Belfield one of the principal witnesses to prove the declarations of Richard Barnes could not be the least soiled by the foul aspersions with which the tongue of slander was long employed to blemish it. — Note in edition of 1796.

 John Alexander in his answer to one of the bills wherein he is a def endent seems confident that Jonathan Beckwithhad seen the codicil of july, 1757, to the testament of Richard Barnes; but that he did not see it is thought to be much more probable.— Note in edition of 1795.

 Between Richard Barnes and Jonathan Beck-with the vicissitudes of harmony and discord, friendly intercourse and spiteful objurgation, which appear by some exhibits and the narratives of several witnesses, shew them to have been sudden and quick in quarrel, yet not implacable after quarrel, however, the behaviour of Jonathan Beck-with was far more reprehensible than that of his wifes father. — Note in edition of 1795.

 Rickard Barnes made three codicils to his testament, dated, — the first the 10 day of july, 1757. another 10 day july, 1759, and the third 30 day of june, 1760. by them the alterations of the testament were favourable to the daughters Sarah and Elizabeth. the codicils upon a contestation by Thomas Barnes the heir, were adjudged void and set aside by Richmond county court, the 7 day of july, 1761: and this sentence, upon a proceeding, in nature of an appeal, was reversed and the codicils established by the general court, the day of 17 —Note in edition of 1795.

 That a suit was commenced is admitted by all parties: but the precise object of it, none of the proceedings being among the exhibits, doth not appear: that it was however to recover either a marriage portion, or what was devised and bequeathed by the testament is not denied by any party. — Note in edition of 1795.

 .This money is mentioned in the codicil of july, 1757, and said to be nearer four than three hundred pounds. — Note in edition of 1795.

 This writing. upon a contestation, was re-j octet!. by the county court of Richmond, hut that .sentence was reversed and the writing: established for the testament of Penelope Barnes by the general court, the 4 day of may, 1769. — Note in edition ■of 1795.

 This land by the testament was devised to Rebecca Beckwith, and by the codicil of 30 day of ¡une, 1760, supposed to be devised to Elizabeth the wife of John Alexander. — Note in edition of 1795.

 John Alexander had recovered the mesne profi ts. — Note in edition of 1795.

 The administration of the estate oí Richard Barnes had been ilrst committed to his widow Penelope Barnes, and afterwards to Jonathan Beckwith in conjunction with her. — Note in edition of 1795.